[Crim. No. 2952. First Dist., Div. One. Apr. 16, 1954.]

THE PEOPLE, Respondent, v. CLARENCE MEEHAN, Appellant.

Clarence Meehan, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

PETERS, P. J.—Defendant, Clarence Meehan, was originally charged with two counts of burglary. The first charge related to an alleged theft at the O. K. Morton Used Car Company lot on October 6, 1952, and the second to an alleged theft at Joe's Service Station in San Jose on October 11, 1952. The defendant changed his plea from not guilty to guilty on the second charge, whereupon, on motion of the district attorney, the first charge was dismissed. Thereafter, the defendant moved to change his plea on the second count to not guilty, which request was granted. An amended information was filed charging a burglary at Joe's Service Station and also charging a prior conviction under section 288a of the Penal Code. Defendant admitted the prior and pleaded not guilty to the burglary charge. After a jury trial he was found guilty of second degree burglary. He appeals from the judgment of conviction and from the order denying his motion for a new trial.

One of appellant's contentions is that he was denied due process by failure of his attorneys to fight for his rights, and by their claimed conspiracy with the prosecution. The record shows quite the contrary. Appellant was first represented by Attorney Thorne, who secured the dismissal of one of the charges and recommended a guilty plea on the present charge. Appellant followed this advice, and then told the court that, if the judge would agree in advance to a suspended prison sentence with service of a county jail sentence, he would allow the guilty plea to stand; otherwise, that he desired to change his plea to not guilty. Attorney Thorne, in open court, stated that he had informed appellant that any such deal would be highly irregular, and that all that he could do as an attorney was to make a recommendation to the court.

The court informed appellant that no promises would or could be made to him in advance. Attorney Thorne thereupon was permitted to withdraw from the case. After several continuances, at appellant's request, the court appointed counsel, this time Attorney Polverino. Against the advice of this attorney, appellant was permitted to withdraw his guilty plea, and to plead not guilty. The amended information was then filed charging the prior conviction which had not theretofore been charged. Attorney Polverino was then discharged by appellant who then secured the services of Attorney Watson. Appellant pleaded not guilty to the burglary and guilty to the prior conviction. Attorney Watson represented appellant at the trial. Appellant now charges his attorneys with conspiring with the trial judge to get him into San Quentin by removing certain testimony from the record, and by certain other acts. These charges are entirely baseless. There is nothing in the record to indicate any laxity or adverse interest on the part of any of his attorneys, or any oppression by the court. In fact, the record shows that the court was quite lenient to appellant and entirely fair with him. It also shows able representation by all of his counsel, and, in particular, by Attorney Watson, who represented him at the trial vigorously and ably.

After conviction, at the request of appellant, this court appointed competent counsel to represent him on the appeal. Appellant was unable to get along with this attorney, fired him, and since then has appeared in propria persona. His "briefs" are long rambling documents in which many unsubstantiated charges are made. In September of 1953 he filed a writ of habeas corpus in this court. This petition was denied, but the brief filed in connection therewith was accepted as an opening brief. ■ In addition to his briefs, appellant has filed a document purporting to be a request for a writ of mandate aimed at correcting claimed omissions in the record. The claimed omissions in the preliminary examination all relate to the charge that was dismissed, and were properly excluded with the full knowledge of appellant's then counsel. There are no omissions in the transcript of the trial. Not only does the reporter's transcript contain the usual affidavit of the reporter that it is full, true and complete, but, at the request of this court, the reporter has checked his notes and has filed a supplementary affidavit to the effect that the transcript is complete. For these reasons, the petition for the writ of mandate will be denied.

 Contrary to the contention of appellant, the evidence amply supports the judgment. The amended information charged the breaking into Joe's Service Station in San Jose with intent to commit theft. The evidence shows that the theft was of certain used batteries. The appellant was definitely identified by an eyewitness of the theft. Joe Valente, who lived next door to the service station, testified that he was awakened in the middle of the night by the sound of someone walking on the gravel of the driveway adjoining his house. He looked out of his window and for half an hour watched the defendant carry batteries from the "lube" room of the service station to his automobile, which was parked in front of the witness' house. While continuing to watch the appellant, the witness had his wife telephone to Joe Faraone, the owner of the service station, and to the police. When the police arrived the witness told them the appellant was still in his automobile, and pointed the car out to them. Appellant was found in the car, together with a number of used automobile batteries. Thirteen batteries had been stolen from the service station. Not only did Valente positively identify appellant as the thief, but Faraone positively identified one of the batteries found in appellant's car as having been taken from his station. One of the arresting officers testified that when he arrived on the scene he noticed that the gate of the service station "lube" track was ajar, and that the lock was missing. Valente called the officer's attention to appellant's automobile. Appellant was in the car. Upon the officer's demand, appellant got out of the car, and, when asked what he had done with the missing lock, stated that he had thrown it away, and the officers found it where appellant told them he had thrown it. Appellant also informed the police officers that he had broken the lock with a crowbar which he had hidden under the back seat of his car. The crowbar was there found. Appellant, at the trial, denied making these admissions.

This evidence obviously supports the judgment. Defendant's testimony merely created a conflict. It was his testimony that the batteries found in his car were his property, he having purchased 15 batteries the day before his arrest from one Clarence Marshall. A receipt showing such a purchase was introduced into evidence, and Marshall, who also operated a service station, testified that he had sold 15 used batteries to appellant on that date. He was unable to identify any of the batteries found in the car of appellant as having

been sold by him, testifying that such identification was impossible. Faraone, however, testified that he could and did identify at least one of the batteries from the markings he had placed upon it. Appellant then testified that the day after he purchased the batteries from Marshall he had driven to Emeryville in Alameda County intending to sell the used batteries to a smelter located there, but arrived after that establishment had closed. He then drove to San Francisco where he transacted some business, and then drove back to San Jose, arriving there about 11 p. m. He stated that he then felt very tired and decided to draw up to the curb and sleep. The record shows that at that time appellant lived in San Jose. He testified that he drew up in front of Valente's house and was sound asleep in his car when the officers arrived. He denied most of Valente's, Faraone's and the arresting officer's testimony. The testimony of appellant and of his witnesses did no more than create a conflict. We are without power to disturb the finding of guilt, based as it is on conflicting testimony.

Appellant contends that the testimony of Valente and Faraone was perjured. This is no more than a charge that his testimony, and that of his witnesses, should be believed rather than the testimony produced by the prosecution. Nothing in the record sustains this charge. The corollary charge that a portion of the testimony of these two witnesses was removed from the record is totally unsupported.

Appellant also charges one of the jurors with "perjury" in that he claims that this juror was present at his preliminary hearing. No challenge of this juror was made at the trial, although appellant claims that he requested his counsel Watson to remove the juror, but that Watson failed to do so. Appellant kept silent. Failure to challenge the juror, of course, amounted to a waiver of that right. (See cases 15 Cal.Jur. p. 419, § 91.) Moreover, even if the juror were present at the preliminary, such fact would not necessarily disqualify him at the trial, because prior knowledge does not, of itself, disqualify. (See cases collected 15 Cal.Jur. p. 421, § 92.)

Some objection is made to the testimony that he had suffered a prior conviction. Appellant took the stand and on cross-examination he volunteered the statement that he previously had been in San Quentin. He was then asked what was the charge, to which he answered section 288a of the Penal Code. He complains of this question. Since the

appellant took the stand, he could properly be asked if he had been convicted of a felony. (Code Civ. Proc., § 2051.) That, substantially, was all that was done here.

None of the other arguments of appellant warrants discussion.

The petition for a writ of mandate is denied, and the order denying the new trial and the judgment are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 6, 1954.